Let findings and a decree in accordance with the form of this decision be presented.

Decreed accordingly.

---

Matter of the Judicial Settlement of the Account of the Substituted Trustee of the Estate of ANDREW FROELICH, Deceased.

(Surrogate's Court, Kings County, March, 1906.)

Trusts — Compensation — Salary for conducting business: Accounting and discharge — Charges in general. Rents and profits — Credits.

> Where a testator gives all the property pertaining to his business, part of which is a foundry, in trust to continue the business, but to stop the same when the trustees' management fails to produce a certain profit, and all the residue of the estate is given to the trustees to collect the rents and income thereof with directions to pay the same to certain designated beneficiaries, the substituted trustee, upon accounting, is under no obligation to charge himself with rent of the foundry and pay the amount so charged into the trust of the residuum of the estate, the net result to the beneficiaries under the trust remaining unaffected whichever course was pursued.

Surrogate's Court, Kings County, March, 1906.    [Vol. 50.

Inasmuch as the rent of the foundry was not a running expense of the business, as contemplated by the testator, and as the limitation under which the business was to be conducted has not, therefore, been reached, the business should be continued by the substituted trustee.

It appearing that the testator's widow, one of the original trustees, instead of taking personal control and management of the business employed a manager at a large salary and after a time resigned as trustee, and, with the commission of ten per cent. of the profits of the business which had been allowed to her as compensation, formed a new company of which her second husband was president, who started a business in opposition to the business which he had managed for her when she was trustee, the substituted trustee is not chargeable with the loss of business during his administration, there being no direct proof of any loss occasioned by any lack of attention on his part.

Though the substituted trustee, in carrying out the practice adopted by the former trustee, paid himself a salary, but at a reduced expense to the estate, he is not chargeable with the salary so paid; and, moreover, is entitled to his commissions.

Expenditures, since the death of the testator, for the entertainment of buyers in order to secure their good will, having been approved in all previous accounts, and having been continued by the substituted trustee and it not appearing that the amounts therefor were improper or incorrect, he should not be charged therewith, though unaccompanied by vouchers, as it will be assumed that the testator, who had adopted such practice, in directing his trustees to carry on the business, contemplated the necessity of their doing the same in order that the business might be managed with the same degree of profit attained during his lifetime.

PROCEEDINGS upon the judicial settlement of the accounts of a substituted trustee.

John E. Bullwinkel, for Charles Froelich, trustee.

Darwin J. Meserole, for Caroline Wolf, objector.

CHURCH, S.    The deceased died a number of years ago, leaving a will under which several trusts were created. The question of the construction of certain provisions of this will has been taken to the Court of Appeals and is reported under the title of Goebel, v. Wolf, 113 N. Y. 405. The substituted

Misc.] Surrogate's Court, Kings County, March, 1906.

trustee, on presenting his accounts for settlement, is met by several objections, which will be taken up in the order in which they are stated, as follows:

*First,* whether or not the trustee should have paid rent for the foundry of the deceased for the use of the same in carrying on the business of the deceased?

*Second,* whether the business should be continued by the substituted trustee?

*Third,* whether the trustee should not be charged with the amount of the loss arising from the conduct of the business during the administration?

*Fourth,* whether the trustee should not be charged with salary paid to himself?

*Fifth,* whether the trustee should not be charged with the entertainment moneys expended by him?

*Sixth,* whether or not Caroline Wolf is entitled to certain rents by virtue of the decease of her infant daughter?

*Seventh,* whether the trustee is entitled to commissions?

Most of these provisions arise in consequence of a trust which was created by the deceased and which directed the trustees to use all the property pertaining to such business as was left by the testator for that purpose. There was also a further provision which gave all the residuum of the estate to the trustees, to collect the rents and income therefrom and pay the same to certain beneficiaries designated by the deceased.

It appears that part of the estate of the deceased was a certain foundry, and the trustees, in their management of the estate, charged against the business the rent for the foundry and paid the amount so charged into the trust of the residuum of the estate.

The present trustee has refused to do this, and contends that, while the method adopted by the preceding trustees, under which this was done, produced no harm either to the estate or to the beneficiaries thereunder, there was no obligation upon him to do the same, as, when the testator gave all of the property pertaining to his business in trust to continue the said business, he must necessarily have included the foundry.

Surrogate's Court, Kings County, March, 1906. [Vol. 50.

I think this contention is correct. There is no more reason why the trustees should charge themselves with rent for the foundry than there is that they should charge themselves for the hire of the various tools and appliances required in such business. It will be observed, of course, that the net result to the beneficiaries under the trust is not affected, no matter which course is adopted, as, in the one case, it simply means that the income derived from the trust pertaining to the real estate is larger, whereas, in the other case, it means that the income derived from the trust in regard to the business is the larger. In other words, this is solely a matter of bookkeeping. But the real importance of the question arises in connection with the proviso in relation to the carrying on of the business which directs that the same shall be discontinued when the trustees' management of the business fails to produce a certain amount of profit; and the question, therefore, of what are the running expenses of such business becomes very important in determining whether the trustees have continued such business for a longer period than was permitted by the testator.

The disposal of the above question practically disposes of the second question as to whether the limitation under which the business was to be conducted has been reached or not, as, if the amount which has been charged up for rent be held not to be one of the expenses of such business within the contemplation of the deceased, then the limitation contained in his will has not been reached. In this connection I might say that there are several items charged as expenses of the business which, in my judgment, should not be regarded as running expenses, but as items in the way of renewal. These items are in the nature of the purchase of new horses and other matters of that kind.

As to the question of the loss incurred in the business during the administratorship of the substituted trustee, it appears that there is no direct proof that there has been any loss occasioned by any lack of attention on the part of such trustee, and the contestant is the last person in the world in a position to make any such suggestion. Her doing so is one of the most amazing pieces of effrontery that has, in my

Misc.]	Surrogate's Court, Kings County, March, 1906.

judgment, ever been displayed in a court of justice. The contestant, the widow of the deceased, was originally one of the trustees. As such trustee, she was allowed to receive ten per cent. of the profits of the business for her compensation in managing the same. It appears also that, instead of taking personal control and management of such business, she employed one Wolf to manage the same for her, for which he was paid a large salary. The present substituted trustee, who is her son, occupied a subordinate position in the business. After a period of time, it appears the contestant married this man Wolf. Subsequently, she rendered her account as trustee and resigned. With the money for the commissions which were due her a new company was formed, in which Wolf, her husband and foreman of the business of the deceased, was the president, but to which he did not contribute a dollar of his own money. He immediately started such business in active opposition to the business which he had been managing for her when she was trustee of this estate.

It was under these circumstances that the son of the deceased was appointed a substituted trustee. He has taken charge of the same and run it to the best of his ability. There is not a particle of testimony as to any specific act of neglect or omission on his part, or any suggestion that, under any other kind of management, under the peculiar circumstances with which he had to contend, any better results could have been obtained, other than the fact that the receipts of the business under his management have not been as great as under that of the previous trustee.

To permit this contestant, the former trustee, who, as the tool of her husband, is doing her utmost to destroy this business, to use so much of the destruction she has wrought as a means of punishing her son is, in my judgment, absolutely without reason. If there is any person who should merit the censure of the court, it is the mother who would treat her son in any such unnatural way as this and the man who would use the means obtained by his marriage in endeavoring to destroy the property left by his predecessor, the first husband of this woman.

Surrogate's Court, Kings County, March, 1906.    [Vol. 50.

The statement of this question brings us to the proposition contained in the fourth objection. As I have stated, the contestant got her commissions in full and her husband, who had practically performed her own work, also received a salary as manager of the company. The substituted trustee did not attempt to obtain his money by any such subterfuge as that, but increased his salary which he had been getting while working in that business, though to a sum which was much less than that which had been previously drawn by his step-father. I appreciate the contention that the commissions of an executor or trustee are the ordinary measure of his compensation. But where this estate had been run for years with the concession that it was necessary to have a manager for the business and where this trustee simply carried on the practice adopted by the prior trustee at a reduced expense to the estate, it does not seem to me that it can be now urged for the first time that such a salary should not be permitted. Certainly this contestant, who has not only benefited by this course but to an extent which enables her to go into a business to destroy that left by the testator, is the last person who should be given any serious consideration by a court of justice in her views on the subject. The determination of this question will, therefore, dispose of the seventh objection in relation to the commissions of this substituted trustee.

The fifth proposition is in relation to what is known as "entertainment" moneys. It appears to have been conceded since the death of the testator that in the conduct of the business it was necessary that certain items should be expended for the entertainment of buyers, in order that, by so doing, their good will could be secured. This practice has been recognized by expenditures which have been approved of in all the previous accounts and has been continued by the substituted trustee herein. There is nothing to show that the amounts which he expended have been improper or incorrect. It stands to reason that such items cannot necessarily be accompanied by vouchers so that the trustee could give a careful statement in regard to the same, as he would do in the case of the ordinary items of an executor's or administrator's account. It is but fair to assume that, as

Misc.]    Surrogate's Court, Kings County, March, 1906.

this was a practice which was carried on by the business during the life of the testator, the testator, in directing his trustees to carry on such business, appreciated that this would be a necessary matter for them to attend to in order that the business might be managed with the same degree of profit as was attained during his lifetime.

As to the claim of the contestant for the share of her deceased child Catherine, it does not appear that there is any sum due her as yet and hence there can be no direction in regard thereto.

Let findings and decree be presented in accordance with this opinion.

Decreed accordingly.